# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>Courtney Leigh Sparks<br>(year of birth 1984)<br><br><br>*Defendant(s)* | )<br>)<br>)  Case No.  MJ 24-1029 KBM<br>)<br>)<br>)<br>) |

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  March 15, 2024 and May 27, 2024  in the county of  Bernalillo and Santa Fe  in the
_____ District of  New Mexico  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(3) | Drug user in possession of a firearm (March 15, 2024) |
| 18 U.S.C. § 922(g)(3) | Drug user in possession of ammunition (May 27, 2024) |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Franklin Mosca
*Printed name and title*

Sworn to me telephonically and signed electronically.

Date: 07/13/2024

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico     Hon. Karen B. Molzen, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Criminal No. _____ |
| ) | |
| **COURTNEY LEIGH SPARKS**, ) | |
| ) | |
| Defendant. ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Franklin Mosca, being first duly sworn, hereby affirm and state:

**INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2023. I have been assigned to the Albuquerque Division since 2024, where I have conducted investigations into cyberstalking and imminent violent threats involving an interstate nexus. My duties include, but are not limited to, the investigation and enforcement of criminal violations related to cyberstalking and threats made via interstate communication. I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 922(g)(3) Unlawful User or Addict of Controlled Substance in Possession of a Firearm or Ammunition. Prior to switching to the Special Agent role in 2023, I previously worked for the FBI as an Intelligence Analyst from 2015 until 2023. From 2019 until 2023, I supported investigations regarding violent criminal activity committed by individuals inspired by domestic violent extremist ideologies, who often demonstrated behaviors indicating a mobilization to violence. I am assigned to the FBI's investigation of Courtney Leigh Sparks (hereinafter "SPARKS") which concerns SPARKS

1

possessing a firearm and ammunition while being a habitual unlawful user of a controlled substance.

2.      This affidavit is submitted for the limited purpose of establishing probable cause for the requested arrest warrant. The facts in this affidavit are based on my investigation, personal observations, training, and experience, as well as information provided to me by other law enforcement personnel. Because this affidavit is limited in purpose, I am not including all facts known to law enforcement concerning this investigation.

## RELEVANT STATUTE

3.      This investigation concerns the possession a firearm and ammunition by an individual while that individual is a user of or addicted to a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Section 922(g)(3) provides it shall be unlawful for any person who is "an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))…to…possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE
## INITIAL REFERRAL TO FBI

4.      On May 22, 2024, the Rio Rancho Police Department informed me of recent interactions by the RRPD Crisis Intervention Team (CIT) with and regarding SPARKS, which concerned SPARKS' desire to create a "Molotov cocktail," her possession of weapons and ongoing drug use, and her intent to harm others with explosives. RRPD reports documented statements from several witnesses with knowledge of SPARKS, identified in this affidavit as

WITNESS 1, WITNESS 2 and WITNESS 3.[1] At various times, WITNESSES 1-3 resided with SPARKS at her residence in Rio Rancho, New Mexico.

5. I reviewed a RRPD Offense/Incident Report, which documented the RRPD CIT's interaction with SPARKS on May 14, 2024, at the address in Rio Rancho. On that date, SPARKS' minor teenage son (MINOR) answered the door when the CIT arrived and mentioned that he had cut fireworks. SPARKS arrived several minutes later and invited officers into the residence, where officers observed drug paraphernalia.

6. Approximately one week later, RRPD CIT spoke with WITNESS 1 about the incident on May 14, 2024, at the Rio Rancho address. In addition to the May 14, 2024 incident, WITNESS 1 told RRPD CIT that on April 22, 2024, SPARKS had engaged in a physical confrontation with another individual, and this had upset SPARKS. SPARKS told WITNESS 1 and MINOR to grab fireworks because SPARKS needed gunpowder for a bomb. SPARKS, WITNESS 1, and MINOR then went into SPARKS' bathroom and began cutting open fireworks and pouring out gunpowder. Within a few minutes, police arrived in response to the physical confrontation and WITNESS 1 stopped helping.

7. RRPD CIT also spoke with WITNESS 2 about the incident on May 14, 2024. WITNESS 2 observed the dismantling of fireworks and expressed concern with SPARKS' possession of firearms and frequent use of methamphetamine, fentanyl, and marijuana. SPARKS had asked WITNESS 2 for help making a Molotov cocktail to blow up a trailer of someone who owed her money. WITNESS 2 left the residence because of SPARKS' behavior.

---

[1] The full identities of WITNESSES 1-3 are known to law enforcement but anonymized here to protect the ongoing investigation.

8. I reviewed the RRPD report dated April 22, 2024, which documented an assault/battery call for service at the Rio Rancho address. According to the report, RRPD arrived and contacted WITNESS 3, who resided at the address along with SPARKS and SPARKS' adult son (SON). WITNESS 3 told RRPD that SPARKS invited WITNESS 3 and SON to live with her. On the afternoon of the same date, WITNESS 3 found her belongings rummaged through and confronted SPARKS. WITNESS 3 told SPARKS to stay out of WITNESS 3's things. SPARKS began bumping her chest against WITNESS 3's chest, and SPARKS realized WITNESS 3 was pregnant. SPARKS stated, "your face isn't pregnant" and slapped WITNESS 3 in the face. WITNESS 3 showed RRPD a photo taken after the slap showing redness to her cheek. WITNESS 3 did not press charges. SPARKS was not present at the residence during RRPD's response. RRPD attempted to call SPARKS, who hung up on the first attempt and did not answer on the second attempt.

9. On May 29, 2024, I received a photograph from RRPD which was provided to RRPD from WITNESS 2. The photograph is included below and depicts the dismantling of fireworks inside the Rio Rancho residence and was reportedly taken on approximately April 22, 2024.

<s>Case 1:24-cr-01113-MLG   Document 1   Filed 07/13/24   Page 6 of 18



5

## FBI INVESTIGATION

A. Interview of Witness 2

10. On May 31, 2024, FBI Special Agent (SA) Aaron Carp and I interviewed WITNESS 2. WITNESS 2 stated s/he initially met SPARKS while they were both residents at an apartment complex. Although the timeframe was not entirely clear, it appears WITNESS 2 has known SPARKS since at least mid-2023. From the time they met, WITNESS 2 had known SPARKS to be an alcoholic, and abuser of other drugs including marijuana, methamphetamine, and fentanyl AKA "blue." WITNESS 2 directly observed SPARKS' use of these substances. SPARKS purchased a house in Rio Rancho and invited WITNESS 2 to move in. WITNESS 2 moved into the residence with SPARKS and MINOR in December of 2023.

11. WITNESS 2 went on to state that in March 2024, SPARKS picked up a male individual[2] from a rehab facility and the two discussed building Molotov cocktails at SPARKS' residence for the purposes of destroying the trailer of a narcotics dealer (NARCOTICS DEALER), who owed money to SPARKS. SPARKS asked WITNESS 2 for advice on how to build Molotov cocktails.

12. After two weeks of discussing building Molotov cocktails, SPARKS purchased two gallons of vodka and told WITNESS 2 that SPARKS was going to go burn down NARCOTICS DEALER's trailer. WITNESS 2 reported SPARKS was on her way to burn down the trailer when she was arrested for driving while intoxicated and the police seized a six-shooter

---

[2] Based on the information from WITNESS 2, as well as the information provided by WITNESS 1 detailed below, I was able to identify this individual as M.D. I confirmed with the United States Marshals Service that M.D. had the prior conviction described by WITNESS 1 and walked away from a rehab facility in Rio Rancho.

revolver from SPARKS. This information was later confirmed, as described in more detail below.

13. In approximately April or May 2024, SPARKS' adult son (SON) and another individual (WITNESS 3) moved into SPARKS' residence. During a dispute between SPARKS, SON, and WITNESS 3, SPARKS struck WITNESS 3 in the face. After this incident, SPARKS had WITNESS 1 and MINOR cut open fireworks and pour the gunpowder in a coffee filter to concentrate it. WITNESS 1 told WITNESS 2 that SPARKS' intent was to collect gunpowder from the fireworks to build a device to harm SON and WITNESS 3.

14. WITNESS 2 knew SPARKS to possess a shotgun or rifle. SPARKS showed the rifle or shotgun to homeless people who visited SPARKS.

B. Interview of Witness 1

15. On June 6, 2024, SA Aaron Carp and I interviewed WITNESS 1. WITNESS 1 stated s/he knew SPARKS since 2022. WITNESS 1 lived with SPARKS at an apartment complex and then at a house in Rio Rancho. WITNESS 2 also lived with SPARKS and WITNESS 1 at the house in Rio Rancho.

16. When SPARKS was arrested for driving while intoxicated in March, SPARKS told WITNESS 1 that SPARKS rented a truck to go throw a Molotov cocktail at the residence of NARCOTICS DEALER, who sold SPARKS methamphetamine. SPARKS was angry with NARCOTICS DEALER because SPARKS had loaned NARCOTICS DEALER money for a vehicle and NARCOTICS DEALER did not pay it back. NARCOTICS DEALER was supposed to pay the debt to SPARKS with methamphetamine or cash but did neither. SPARKS later told NARCOTICS DEALER that SPARKS intended to burn NARCOTICS DEALER's house down.

17.     On the night SPARKS "put hands" on WITNESS 3, SPARKS had MINOR cut open fireworks in the bathroom and was attempting to concentrate the gunpowder from the fireworks. SPARKS told WITNESS 1 that SPARKS was "going to set it off when walking out the door."

18.     WITNESS 1 stated SPARKS had a .38 revolver that the police took after SPARKS' arrest in March for driving while intoxicated. SPARKS also had a pellet gun and sawed-off shotgun. SPARKS kept the sawed-off shotgun in a hall closet at SPARKS' house in Rio Rancho. WITNESS 1 last saw the shotgun a few days before WITNESS 1 left the Rio Rancho house. The shotgun was cut so it was no longer than the width of WITNESS 1's shoulders.

19.     WITNESS 1 did not observe SPARKS' firearms until WITNESS 1 lived with SPARKS in Rio Rancho. WITNESS 1 stated SPARKS abused methamphetamine and fentanyl during the time SPARKS possessed these weapons. SPARKS kept the revolver and pellet gun in SPARK's bedroom. SPARKS kept a hatchet under the seat in her car.

20.     WITNESS 1 also stated SPARKS used whatever controlled substance she could obtain. WITNESS 1 had observed SPARKS use drugs regularly since 2022, including fentanyl and methamphetamine. SPARKS had mushrooms at one point. SPARKS discontinued taking prescribed medication, but possibly used a strong tranquilizer and psychotic medications.

21.     WITNESS 1 stated that in January or February 2024, SPARKS picked up M.D. from a rehab facility in Rio Rancho. M.D. was not supposed to leave the facility and had previously been arrested for bank robbery and was incarcerated in Hobbs, New Mexico. SPARKS sent narcotics to M.D. while he was in prison through couriers, but SPARKS never brought it to M.D. herself.

C. Interview of Witness 4

22.     On June 12, 2024, Special Agents from the FBI Phoenix Field Office interviewed WITNESS 4, a relative of SPARKS. WITNESS 4 knew SPARKS to possesses the knowledge to construct an explosive device. The father of SPARKS kept a muzzleloader rifle and cannisters of black powder around. SPARKS is familiar with the uses of black powder and would know how to pair PVC, black powder, and end fittings to construct a device. On one occasion, SPARKS built a smoke bomb and threw it through a window of a residence of someone known by WITNESS 4. WITNESS 4 knows SPARKS to possess firearms including a .22 caliber handgun and a snub nose .38 special. WITNESS 4 stated that SPARKS would likely have ammunition for those firearms. SPARKS' father gave SPARKS a shotgun as wedding gift along with a box of shotgun shells.

23.     WITNESS 4 has been aware of SPARKS' substance abuse for more than twenty years. SPARKS and WITNESS 4 used to use heroin together. SPARKS' substance abuse began with Percocet but then progressed to heroin and meth. SPARKS' mental health status has declined recently due to SPARKS' boyfriend dying in a fire. SPARKS was awarded a settlement due to a wrongful death suit involving her boyfriend. Using some of the money, SPARKS would go to a homeless shelter in Albuquerque located on the corner of Zuni and Louisiana to pick up strangers, bring them to her house, and do drugs. WITNESS 4 recalled an incident when SPARKS called WITNESS 4 and stated that a Game Warden in Farmington, NM had found SPARKS walking around naked. SPARKS makes threats all the time when someone angers SPARKS.

24. WITNESS 4 showed the Special Agents text messages[3] from SPARKS. A photograph of messages sent from SPARKS to WITNESS 4 on June 4, 2024, depicting a white crystal-like substance in wrapping is attached below:



---

[3] WITNESS 4 also showed the Special Agents text messages of photographs SPARKS took of herself sent from the same phone number, which WITNESS 4 identified as SPARKS' number.

10

D. Interview of WITNESS 3

25.  On June 13, 2024, Special Agents from the FBI Phoenix Field Office interviewed WITNESS 3. WITNESS 3 told agents that WITNESS 3, SON, and the child of WITNESS 3 lived with SPARKS for approximately one month. On April 22, 2024, SPARKS went through the room of WITNESS 3 and SON. WITNESS 3 asked SPARKS to leave the room, to which SPARKS replied it was SPARKS' house and SPARKS could do whatever SPARKS wanted. WITNESS 3 and SPARKS engaged in a verbal altercation when SPARKS struck WITNESS 3 on the face. WITNESS 3 called the non-emergency police number, reported the incident, and police responded. After the incident, WITNESS 3 obtained a restraining order against SPARKS.

26.  On a different occasion, SPARKS told SON that SPARKS was setting fire to WITNESS 3's room. Any time people were heard outside of the residence, SPARKS would get a shotgun and put it by the front door. She would then tell MINOR "he knew what to do." SPARKS yelled at people who came into the residence and threatened to set their house on fire.

27.  SPARKS told WITNESS 3 that SPARKS carried weapons. WITNESS 3 only saw a shotgun. SPARKS blamed SON for stealing SPARKS' drugs. WITNESS 3 knew SPARKS used methamphetamine and "weed." SPARKS also had detox bottles for when SPARKS' needed to complete drug testing.

## ADDITIONAL CORROBORATION OF UNLAWFUL NARCOTICS USE

A. 2015 Los Lunas Police Department (LLPD) arrest of SPARKS

28.  I reviewed a LLPD case report from May 28, 2015. According to the report, LLPS arrested SPARKS for driving while under the influence and possession of a controlled substance. The LLPD Officer (LLPD OFFICER) decided to stop SPARKS' vehicle after running the license plate though a mobile data terminal and discovering the vehicle registration was

11

expired. Before the LLPD Officer could turn off the emergency lights to conduct a traffic stop, the vehicle made a turn and almost hit three pedestrians, with the right of way, crossing the street in a cross walk. SPARKS vehicle had to swerve to avoid hitting the pedestrians.

29. LLPD OFFICER conducted a field sobriety exam and identified there was probable cause to arrest SPARKS for driving while under the influence of alcohol or drugs. LLPD OFFICER then escorted SPARKS to LLPD OFFICER's vehicle, performed a search incident to arrest finding no weapons on SPARKS, and then visually checked the back seat of the vehicle finding no weapons or contraband. LLPD OFFICER transported State Police Department in Los Lunas, and while enroute noticed one of SPARKS' hands appeared to be out of the hand cuff. LLPD OFFICER asked SPARKS if she had slipped out of her cuff and SPARKS responded that she had. LLPD OFFICER stopped the vehicle, began reapplying the handcuffs, and found a small clear bag containing a crystal-like substance, which field tested positive for the properties of methamphetamine. LLPD OFFICER checks the back seat of LLPD OFFICER's vehicle before every shift and there was no contraband in LLPD OFFICER's vehicle. SPARKS was the first person in LLPD OFFICER's vehicle on that day.

30. Criminal history records list SPARKS as guilty of Use or Possession of Drug Paraphernalia and DWI, with a sentence of 11 months and 29 days probation for LLPD's arrest on May 28, 2015.

B. SPARKS' Call to the FBI National Threat Operations Center (NTOC)

31. On July 5, 2024, I reviewed an approximately nine-minute recording of a call made by **SPARKS** to the FBI NTOC on May 26, 2024. SPARKS called to report "three subjects" from a "cold case" regarding the West Memphis Three Documentary. SPARKS told the intake examiner that SPARKS did not know the identities of the three subjects and there was a "child in

12

the background." SPARKS' comments were not entirely clear, and her words were slurred. SPARKS told the threat intake examiner that she "got sober enough to realize" and "I learned to self-medicate, way long time ago. I mean I was self-medicating, but not medicating." The threat intake examiner requested SPARKS to clarify several statements during the call, and SPARKS terminated the call with the examiner.

## FEDERAL OFFENSE CONDUCT

A. <u>Albuquerque Police Department (APD) March 15, 2024 Arrest of SPARKS</u>

32. I reviewed an APD Offense/Incident Report dated March 15, 2024. According to the report, a truck driven by SPARKS collided into an Albuquerque Fire and Rescue team fire truck. An APD officer observed the odor of alcohol on SPARKS' breath and slurred speech. SPARKS told the APD officer that she drank a "pony," which is slang for a shot of alcohol. The APD officer observed multiple indicators of intoxication and arrested SPARKS for driving under the influence. The vehicle was searched and towed, and APD found a revolver in the cup holder of the center console, which was loaded and in full reach of SPARKS, three open bottles of alcohol in her glove compartment, and a narcotics pipe on SPARKS' person. The revolver was a silver Colt .38 caliber Detective Special revolver with a wooden handle and serial number H52039, often referred to as ".38 Special" or a "snub-nose revolver." APD found five rounds and one casing with the revolver. SPARKS was charged with driving under the influence, negligent use of a firearm, open container and possession of drug paraphernalia, and transported and booked to the Metropolitan Detention Center, in Albuquerque, New Mexico.

33. Therefore, I have probable cause to believe that SPARKS is an unlawful user of controlled substances and was in possession of a firearm in Bernalillo County on March 15, 2024.

B. <u>New Mexico State Police (NMSP) arrest of SPARKS on May 27, 2024</u>

34.     I reviewed an NMSP Offense/Incident Report which documented the arrest of SPARKS on May 27, 2024. According to the report, a NMSP officer (NMSP OFFICER) was flagged down by a driver in Rio Arriba County, New Mexico, who wanted to report a possible intoxicated driver. NMSP OFFICER located a vehicle which matched the description provided by the driver and observed the vehicle driving below the posted speed limit and crossing over the marked road lines. While NMSP OFFICER approached the vehicle, SPARKS partially got out of the vehicle and placed something on the roof. NMSP OFFICER told the driver to get back in her vehicle. SPARKS told NMSP OFFICER that she was trying to assist NMSP OFFICER by placing her driver license on the roof of the vehicle. SPARKS was unable to locate the paperwork inside the vehicle and was unable to maintain her focus on what NMSP OFFICER asked. MINOR was in the vehicle. SPARKS told NMSP OFFICER that SPARKS was coming from Colorado. SPARKS denied having consumed any alcoholic beverages. NMSP OFFICER observed SPARKS had bloodshot/watery eyes and slurred speech. NMSP OFFICER placed SPARKS into investigative detention to determine if SPARKS' vehicle had an Interlock Device, which it did not.

35.     NMSP OFFICER asked SPARKS if there was anything SPARKS would like to take with her to the Rio Arriba Detention Center. SPARKS and MINOR spoke in unison about the cash, phones, and a bag in the backseat, and SPARKS mentioned her makeup bag. NMSP officer found a backpack, a purse and some smaller bags. After moving one of the bags, NMSP OFFICER located a blue pill with the markings "M30" underneath the bag, which NMSP OFFICER recognized to be consistent with the drug narcotic Fentanyl.

36.     NMSP OFFICER set the bag back down in the vehicle and rolled up the windows. The vehicle was sealed and dated May 27, 2024. A towing company towed the vehicle to the New Mexico State Police Office in Espanola, NM.

37.     NMSP OFFICER transported SPARKS to the NMSP Office in Espanola. While NMSP OFFICER escorted SPARKS to the holding area, SPARKS still slurred her speech, had bloodshot/watery eyes, and a faint odor of alcoholic beverage emitting from her facial area. NMSP OFFICER read SPARKS her Miranda Warning in which SPARKS agreed to speak with NMSP OFFICER. SPARKS said the blue pill found in the vehicle was Fentanyl. SPARKS stated she had a pocketful of Fentanyl that SPARKS had been using over the last few days. SPARKS told NMSP OFFICER that the one in the backseat must have fallen out of SPARKS' pocket when SPARKS was sitting in the back seat while a friend drove the car. SPARKS told NMSP OFFICER that SPARKS used narcotics in the past and was a heavy user. SPARKS said she had since become sober.

38.     On May 29, 2024, NMSP conducted a search of SPARKS' vehicle pursuant to State of New Mexico Search Warrant. NMSP found one box of .38 special ammunition, one box of 12 gauge shotgun shells, two hatchets, one throwing knife, a machete, three pocket knives, one cell phone, two glass pipes, five empty labeled Marijuana containers, three small containers with a wax like substance, one small container of a loose, green leafy substance, one labeled bag of loose Marijuana, two medium containers of labelled Marijuana, one container of labeled Marijuana Resin, two vape cartridges and one pre-rolled Marijuana cigarette. Photographs also showed the brand of the .38 special ammunition as Blazer, with the casing stamped with "CCI". The shotgun shells were labeled Super X, in a box labeled Winchester Super X 12 Gauge, 2 ¾ inches, 1290 velocity, 1 oz., 8 shot.

## INTERSTATE NEXUS

39. On June 17, 2024, I reviewed Bureau of Alcohol, Tobacco and Firearms Records which showed the Colt Revolver serial Number H52039, which was possessed by SPARKS and seized on March 15, 2024, was originally purchased on November 1, 1975, from an identified store in Warsaw, Indiana. Therefore, the revolver traveled in interstate commerce before arriving in New Mexico.

40. On July 10, 2024, an identified representative from CCi Ammunition reviewed a photo of the Blazer .38 special ammunition seized from SPARKS by NMSP on May 27, 2024 and confirmed that CCi Ammunition manufactured the ammunition in Lewiston, Idaho.

## CONCLUSION

41. In summary, I have probable cause to believe that SPARKS was in possession of firearm on March 15, 2024, based on the firearm seized by APD during an arrest, and of ammunition on May 27, 2024, based on the ammunition seized by NMSP pursuant to a search warrant of SPARKS vehicle. Based on interviews of WITNESSES 1-4, much of which was corroborated as detailed above, the pipe seized by APD and the substances seized by NMSP, I have probable cause to believe SPARKS is a habitual unlawful user of controlled substances at least over the past two years, to include at the time she possessed the firearm and ammunition.

42. Assistant United States Attorney Sarah Mease has reviewed and approved this application.

43. I swear that this information is true and correct to the best of my knowledge.

Respectfully submitted,

_____
Franklin Mosca
Special Agent
Federal Bureau of Investigation

Subscribed electronically and sworn to me telephonically on
July __13__, 2024:

_____
HONORABLE KAREN B. MOLZEN
United States Magistrate Judge

17